**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**

CITY OF GREENVILLE, et al.,    )
                                    )
          Plaintiffs,      )
                                    )
          v.                )    Nos. 11-mc-10;
                                    )      11-mc-1031; and
SYNGENTA CROP          )    11-mc-1032
PROTECTION, INC., et al,    )
                                    )
          Defendants.    )

## OPINION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This matter comes before the Court on Motions to Quash Subpoena brought by non-parties Chemical Industry Council of Illinois (CICI) (Case No. 11-mc-10), Illinois Agricultural Association a/k/a Illinois Farm Bureau (IFB) and Philip Nelson (IFB) (Case No. 11-mc-1031), and the Illinois Fertilizer and Chemical Association (IFCA) (Case No. 10-mc-1032) (collectively the Movants). <u>Motion to Quash or in the Alternative for a Protective Order and Objections to the Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action and to Testify at a Deposition in a Civil Case (Case No. 11-10 d/e1) (CICI Motion); Third Party Subpoena Respondents Illinois Farm Bureau and Philip Nelson's Motion to Quash Subpoena to Produce Documents or in the Alternative for a Protective Order (Case No. 11-1031 d/e 1)</u> and <u>Third Party</u>

Subpoena Respondents Illinois Farm Bureau and Philip Nelson's Motion to quash Subpoena for Deposition and Deposition Notice or in the Alternative for a Protective Order (Case No. 11-1031 d/e 3) (the two Motion are collectively referred to as the IFB Motions)); and Motion to Quash or in the Alternative for a Protective Order and Objections to the Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action and to Testify at a Deposition in a Civil Action (Case No. 11-1032 d/e 1) (IFCA Motion).  For the reasons set forth below, the Motions are ALLOWED.

## BACKGROUND

The City of Greenville, Illinois, and numerous other municipalities and public water suppliers (the Plaintiffs) have brought an action in the United States District Court for the Southern District of Illinois against Defendants Syngenta Crop Protection, LLC, f/k/a Syngenta Crop Protection, Inc., and Syngenta AG (collectively Syngenta) seeking damages allegedly caused by the Defendants' product Atrazine.  CICI Motion, Exhibit 2, City of Greenville, et al., v. Syngenta Crop Protection, Inc., et al., S.D. IL. Case No. 10-188, First Amended Complaint (Complaint).  The Plaintiffs allege that Syngenta manufactures and distributes Atrazine.  Atrazine is a herbicide used in agriculture.  Atrazine is one of a group of herbicides called triazenes.  Syngenta introduced Atrazine to farmers in the United

States in 1959 and has marketed Atrazine in the United States thereafter. Complaint, ¶ 33-34. The Plaintiffs allege that Atrazine pollutes streams and ground water, and the Plaintiffs suffer damage because they must pay the cost to remove Atrazine during the water treatment process. The Plaintiffs allege claims for trespass, public nuisance, products liability, and negligence. Id. Counts I, II, III, and IV. The Plaintiffs seek punitive damages because they allege that Syngenta's conduct was willful, wanton, and malicious. Id. ¶¶ 55, 57, 64, 66, 74, 76, 82. The Plaintiffs also seek class status for all public water providers located in the states of Illinois, Indiana, Iowa, Kansas, Missouri, and Id. ¶ 42.

Movants CICI, IFB, and IFCA (the Associations) are associations of farmers, businesses, and interested individuals involved in the agriculture industry. The Associations all engage in lobbying and other advocacy on behalf of their members. Nelson is the President of IFB. Syngenta is a member of CICI, IFCA, and IFB. Defendant Syngenta Crop Protection, LLC's Reply to Plaintiffs' Opposition to Third Party Subpoena Recipient Chemical Industry Council of Illinois' Motion to Quash (Case No. 11-10 d/e 8) (Syngenta CICI Reply), at 1; Defendant Syngenta Crop Protection, LLC's Reply to Plaintiffs' Opposition to Third Party Subpoena Recipient Illinois Fertilizer & Chemical Association's Motion to Quash or in the Alternative for a Protective Order (Case No. 11-1032 d/e 9) (Syngenta

IFCA Reply), at 1; <u>Defendant Syngenta Crop Protection, LLC's Reply in Support of Third Party Subpoena Recipient Illinois Farm Bureau and Philip Nelson's Motion to Quash Subpoena to Produce Documents or in the Alternative for a Protective Order (Case No. 11-1031 d/e 13) (Syngenta IFB Reply)</u>, at 1.

The Plaintiffs served the Movants with identical subpoenas.  The subpoenas commanded the presence of  the head of each Association to testify at depositions and also commanded the production of the following documents:

1.  All documents and electronically-stored information regarding atrazine sent to or received from Syngenta or anyone acting on behalf of Syngenta.

2.  All other documents and electronically-stored information regarding Atrazine.

3.  All other documents and electronically-stored information regarding Syngenta.

4.  All documents and electronically-stored information regarding any payment, compensation, contribution, gift, honorarium or other thing of monetary value received from Syngenta.

5.  All documents and electronically-stored information regarding the Triazine Network, the Kansas Corn Growers Association, the Kansas Grain Sorghum Producers Association, or Crop Life America.

<u>CICI Motion</u>, Exhibit 1, <u>Subpoena</u>, Exhibit A.

The Movants seek to quash the subpoenas.  The Movants argue that the subpoenas are overly broad and unduly burdensome.  The Movants

also argue that the subpoenas violate the First Amendment rights of the Association's members. Syngenta supports the Movants' request to quash the subpoenas. The Plaintiffs ask the Court to deny the Motions. Nelson moves separately to quash the deposition subpoena served on him.

A similar action has been filed in state court in Madison County, Illinois. Holiday Shores Sanitary District v. Syngenta Crop Protection, Inc. et al., Madison County, Illinois, Circuit Court No. 2004-L-000710 (State Court Action). The Plaintiffs in the State Court Action served similar subpoenas on the Associations, and the Associations filed similar motions to quash. The Illinois Circuit Judge in the State Court Action denied the motions in part. Syngenta sought review of this ruling. The Appellate Court denied the request for interlocutory review. Syngenta filed a petition for leave to appeal (PLA) before the Illinois Supreme Court. This Court stayed consideration of the Motions until the Illinois Supreme Court ruled on the PLA. The Illinois Supreme Court has now denied the PLA. Supplemental Joint Status Report (Case No. 11-10 d/e 10). The stay has been lifted. The Motions herein have been fully briefed and the matter is now ready for determination.

<u>ANALYSIS</u>

This Court should avoid constitutional issues when possible. See Brandt v. Village of Winnetka, Illinois, 612 F.3d 647, 650 (7th Cir. 2010).

The Court, thus, will first address the objections that the document request in the subpoenas is overly broad and unduly burdensome, and then address the First Amendment objections for any requests that are not otherwise objectionable.

A.    Undue Burden

This Court must quash or modify a subpoena that subjects a person to undue burden.  Fed. R. Civ. P. 45(c)(3)(A)(iv).  To determine the existence of undue burden, this Court compares the burden of compliance with the benefit of production of the material sought.  See Northwestern Memorial Hospital v. Ashcroft, 362 F.3d 923, 927 (7th Cir. 2004).  Non-party status is a significant factor when comparing the burden of compliance and the benefit of production.  U.S. v. Amerigroup Illinois, Inc., 2005 WL3111972, at *4 (N.D. Ill. 2005).  The Plaintiffs' subpoenas listed the five categories of documents quoted above.  The Court will address each of the five categories of document requests in order.

1.    All documents and electronically-stored information regarding atrazine sent to or received from Syngenta or anyone acting on behalf of Syngenta.

The Movants object to this request as unduly burdensome because the request has no time limit and the Movants would need to scour records from throughout the organization.  The Plaintiffs respond that the request is relevant to their claims and the relevance outweighs any burden.  The

Plaintiffs have presented evidence that IFB and IFCA have advocated for the use of Atrazine.  In doing so, they have cooperated with Syngenta.  The communications between them may be relevant to show Syngenta's knowledge of the effects of Atrazine.  Such information may lead to admissible evidence regarding the intent element in the Plaintiff's trespass count and the willful and wanton allegations in the claim for punitive damages in the other counts.

The lack of any time limit, however, poses a serious burden on the non-party Movants.  The Plaintiffs allege that Syngenta has distributed Atrazine in the United States for approximately 52 years.  Complaint ¶ 33. The documents submitted by the Plaintiffs show that Syngenta and the IFB have collaborated on Atrazine issues since at least 1999.  Plaintiffs, City of Greenville et al.'s Combined Opposition to the Illinois Farm Bureau's Motions to Quash Subpoena & Deposition Notice (Case No. 11-1031 d/e 9) (Plaintiffs' IFB Response), Exhibit I, The Facts About Atrazine and Agricultural Stewardship, at 2.  The Plaintiffs have presented evidence indicating that Syngenta and CICI worked together with IFCA, IFB, and others in 2010 to challenge the  testimony of University of California professor Tyrone Hayes before the Illinois House of Representatives Environmental Health Committee about the hazards of Atrazine.  Plaintiff, City of Greenville, IL, et al., Opposition to the Chemical Industry Council of

Illinois' Motion to Quash Case No. 11-10 d/e 6) (Plaintiffs' CICI Response), Exhibit D, <u>Email from Mark Biel to Jean Payne dated May 25, 2010</u>, and Exhibit E, <u>IFCA February 12, 2010 Web Page</u>.  IFB and CICI may have worked with Syngenta to advocate for Atrazine in response to the State Court Action since 2005.  <u>See</u>  <u>Plaintiffs' Response to Movants' Motion to Cite Additional Authority in Support of the Motion to Quash (Case No. 11-1031 d/e 28) (IFB Supplemental Response)</u>, Exhibits B, and C (Case No. 11-1031 d/e 23 and 24) .  The Plaintiffs present evidence that in 2007 IFB released a paper entitled <u>Illinois Without Atrazine: Who Pays?</u>  The paper was written by University of Chicago Professor Don Coursey and was prepared for Syngenta.  <u>Plaintiffs' IFB Response</u>, Exhibit H.  The Plaintiffs also present information that IFB and IFCA have advocated for the use of Atrazine since 1995.  <u>Plaintiffs' IFB Response</u>, Exhibit J, <u>Grower Benefits Information on Traizine Herbicide use in Illinois</u>, dated August 1995 and submitted by IFCA, IFB, and others.

In balancing the burden on the Movants and the benefits to the Plaintiffs, the Court finds that in order to avoid an undue burden this request should be limited to documents sent or received by the Associations after January 1, 1999.  That dates reflect the dates of demonstrated collaboration between Syngenta and any of the Associations.  The Court therefore sustains the undue burden objection in

part and overrules the objection in part. The subpoenas are modified to limit the category of documents regarding Atrazine sent to or received from Syngenta by each of the Associations after January 1, 1999. However, this finding must be read in conjunction with the Court ruling upon the Associations' First Amendment objection as discussed below.

2.    All other documents and electronically-stored information regarding Atrazine.

The Movants again object as unduly burdensome due to the lack of any time limitation, to a lack of relevancy, and the unreasonable breath of all documents related to Atrazine. The Plaintiffs again argue that the documents are relevant. The Court finds the request would impose an undue burden because the request has no limitations in time and no tie to Syngenta. The issue is Syngenta's culpability in marketing Atrazine. The Associations are advocacy groups that pursue their members' interests with many people and entities unrelated to Syngenta. There is no reason to force non-parties to find and disclose material not related to Syngenta and not limited to any time frame. The Court sustains the objection to this request as unduly burdensome.

3.    All other documents and electronically-stored information regarding Syngenta.

The Movants again object to the request as unduly burdensome due to the lack of any time limitation, to a lack of relevancy, and to the

unreasonable burden to find and disclose all documents related to Syngenta. The Plaintiffs again argue that the documents are relevant. Contacts with Syngenta unrelated to Atrazine are not relevant or likely to lead to relevant evidence. The lack of a time limit is even more troubling in this request. The first two requests would be limited to 52 years worth of documents after Atrazine came on the market in 1959. This request would extend back to the date the Syngenta started doing business in the United States. The lack of any limitations to tie this request to Atrazine or a reasonable time period make this request unduly burdensome. The Movants' objections to this request are sustained.

      4.      All documents and electronically-stored information regarding any payment, compensation, contribution, gift, honorarium or other thing of monetary value received from Syngenta.

The Movants again object to the request as unduly burdensome due to the lack of any time limitation, to a lack of relevancy, and to the unreasonable burden to find and disclose all things of value received from Syngenta. The Plaintiffs again argue that the documents are relevant. The compensation may be relevant to the issue of Syngenta's intent. IFB and Syngenta have cooperated in presenting information about Atrazine since 1999, and all the Associations have been involved in joint efforts to disseminate information about Atrazine and to advocate for its use in agriculture. The evidence further indicates that Syngenta has attempted to

encourage the Associations and others to form advocacy groups for Atrazine and give the appearance that Syngenta is not involved in the advocacy groups.  IFB Supplemental Response, Exhibit F, Email from Jayne Thompson to Ford Sherry dated August 22, 2009 (Case No. 11-1031 d/e 27).  This may be relevant to the show that Syngenta has tried to hide its advocacy for Atrazine.

Syngenta's advocacy of Atrazine, however, is not at issue.  The Plaintiffs do not allege fraud or other torts based on misrepresentations or deceptive business practices.  The relevant intent element is Syngenta's knowledge of the effects of Atrazine use.  The benefit of evidence of Syngenta's efforts to advocate for its product through the Associations or in cooperation with the Associations is, thus, limited.

The burden of the request  is significant.  The request is not limited in time or limited to payments related to Atrazine.  The request seeks all evidence of all payments of any kind made for any reason for as long as Syngenta and each Association has existed.  Syngenta is a large company that deals in many agricultural products and the Associations similarly are interested in many aspects of agriculture that would include many of Syngenta's products, not just Atrazine.  See e.g., Plaintiffs' CICI Response, Exhibit E, IFCA February 12, 2010 Web Page (discussing IFCA involvement in many issues including Atrazine; regulation of fertilizer on

turf; Illinois Department of Agriculture proposed fees for certain reports,

agrochemical facility permits, pesticide product registration, scale and

inspection fees; and spray drift).  The lack of any limitation on the request

would, thus, require the Movants to collect large amounts of irrelevant

information.  The Court finds that the burden exceeds the benefits and

sustains the objection to this request.

> 5.    All documents and electronically-stored information regarding
>        the Triazine Network, the Kansas Corn Growers Association,
>        the Kansas Grain Sorghum Producers Association, or Crop Life
>        America.

The Movants again object to the request as unduly burdensome due

to the lack of any time limitation and to a lack of relevancy of the contacts

between the Movants and these other organizations.  The Plaintiffs again

argue that the documents are relevant.  The Court agrees with the

Movants.  The request is unreasonably broad because the request is not

limited in time and is not limited to contacts or communications related to

Atrazine or Syngenta.  The Plaintiffs present evidence that Syngenta has

contacted all these organizations to assist in advocating for the use of

Atrazine.  The Associations, however, are concerned with many aspects of

agriculture, not just Atrazine.  Their contacts with similar organizations are

not limited to Syngenta's interest in Atrazine.  The request effectively asks

the Associations to produce all documents containing all communications

with these other associations related to all aspects of agriculture for as long as these organizations have existed.  The request is simply too broad and would cause an undue burden on the Associations to collect irrelevant information.  The objection is sustained.

B.    First Amendment Privilege

The members of these Associations have First Amendment right to freedom of association to join together to advocate their views,

> [T]he right of association is a "basic constitutional freedom,"
> that is "closely allied to freedom of speech and a right which,
> like free speech, lies at the foundation of a free society."  In
> view of the fundamental nature of the right to associate,
> governmental "action which may have the effect of curtailing
> the freedom to associate is subject to the closest scrutiny."

Buckley v. Valeo, 424 U.S. 1, 25 (1976) (quoting Shelton v. Tucker, 364 U.S. 479, 486 (1960) and NAACP v. State of Alabama ex rel. Patterson, 357 U.S. 449, 460-61 (1958) (internal citations omitted).  Thus, this Court's power to command the production of information may not be used to violate those First Amendment rights.  NAACP, 357 U.S. at 460-62; see Grandbouche v. Clancy, 825 F.2d 1463, 1466 (10th Cir. 1987) (First Amendment privilege applies to discovery disputes between two private parties).  This First Amendment privilege from disclosure in discovery has been extended to protect against the disclosure of the identity of members and the content of internal communications between members, employees,

and agents of associations.  See Perry v. Schwarzenegger, 591 F.3d 1147, 1162-63 (9th Cir. 2010).  The constitutional concern is to protect the First Amendment rights of individuals to associate with each other and to speak as a group.  The concern is that disclosure will inhibit the exercise of First Amendment rights.  Sometimes disclosure of the identity of the members of the association will subject members to harassment and intimidation because the association advocates a controversial view.  E.g., NAACP, 357 U.S. at 462.  Sometimes disclosing internal communications, including communications with members, may inhibit members and association staff from participating in advocacy activities and from exchanging and ideas freely and openly.  See Perry, 591 F.3d at 1162-63; Wyoming v. U.S. Dept. Of Agriculture, 208 F.R.D. 449, 454-55 (D.D.C. 2002) (disclosure of internal communications, "would have a potential 'for chilling the free exercise of political speech and association guarded by the First Amendment.'" (quoting Federal Election Commission v. Machinists Non-Partisan Political League, 655 F.2d 380, 388 (D.C. Cir. 1981)).

In this case, the one remaining category of information is communications between Syngenta and the Associations about Atrazine. This category of information does not threaten to disclose the identity of members of these organizations and does not threaten to disclose the internal communication among employees and agents of the Associations.

The category, however, will disclose communications between each Association and one of its members, Syngenta. Thus, the First Amendment privilege is implicated.

The First Amendment privilege of the Associations' members is not absolute. The courts have an interest in uncovering the truth and providing a resolution to the parties. See Deitchman v. E.R. Squibb & Sons, Inc., 740 F.2d 556, 561 (7th Cir. 1984). The Associations must first make a prima facie showing that compliance with the subpoena, "will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." Perry, 591 F.3d at 1160 (quoting Brock v. Local 375, Plumbers International Union of America, AFL-CIO, 860 F.2d 346, 350 (9th Cir. 1988)); accord, In re Motor Fuel Temperature Sales Practices Litigation, 641 F.3d 470, 488 (10th Cir. 2011). If the Movants make this showing, then the Plaintiffs must show that the information is essential to their case and could not obtained by other means that would be less likely to discourage such advocacy. United States v. Citizens State Bank, 612 F.2d 1091, 1094 (8th Cir. 1980).

Syngenta and IFB have presented declarations from staff and members of the Associations. Syngenta CICI Reply, Exhibit 1, Declaration of Mark A. Biel, and Exhibit 2, Declaration of Dennis Kelly; Third Party

Subpoena Respondents Illinois Farm Bureau and Philip Nelson's Memorandum in Support of Motion to Quash Subpoena to Produce Documents or in the Alternative for a Protective Order (Case No. 11-1031 d/e 2) (IFB Memorandum), Exhibit A, Declaration of Nancy Erickson, Exhibit B, Declaration of Kay Shipman, and Exhibit C, Declaration of Mike Campbell; Syngenta IFCA Reply, Exhibit 1, Declaration of Jean Payne.[1] These declarations state that disclosure of communications between each Association and a member, Syngenta, would have a chilling effect on other members' communications with the Associations and internal communications within Associations. Members and Association agents and employees will be reluctant to communicate freely with each other to discuss issues such as Atrazine use if they know that the Associations may be required to divulge those conversations. IFB member Mike Campbell stated that he would have to seriously reconsider his membership in the IFB if his communications were subject to disclosure.

Such declarations are sufficient to make out a prima facie case for asserting the First Amendment privilege in this case. The Seventh Circuit

_____

[1]Syngenta also filed the Erickson, Campbell, and Kelly Declarations in support of the IFB Motion and filed the Kelly Declaration in support of the IFCA Motion. Syngenta IFCA Reply,Exhibit 2, Declaration of Dennis Kelly; and Syngenta IFB Reply, Exhibit 1, Declaration of Nancy Erickson, Exhibit 2, Declaration of Mike Campbell, and Exhibit 3, Declaration of Dennis Kelly. CICI and IFCA did not submit declarations; however, Syngenta submitted the declarations of the chief officers of each of these Associations that were submitted in the State Court Action. The Court believes that these submissions are sufficient to proceed with the Motion.

has not addressed the issue directly, but other Courts of Appeals have found similar affidavits to be sufficient to make a prima facie showing.  See Perry, 591 F.3d at 1163; American Federation of Labor and Congress of Indus. Organizations v. Federal Election Commission, 333 F.3d 168, 177 (D.C. Cir. 2003);  Dole v. Service Employees Union, AFL-CIO, Local 280, 950 F.2d 1456, 1458-60 (9th Cir. 1991); see also United States v. Citizens State Bank, 612 F.2d 1091, 1094 (8th Cir. 1980).  It is true that several of these cases involved controversial issues.  Perry, 591 F.3d at 1152 (state constitutional amendment to recognize only marriages between one man and one woman); Dole, 950 F.2d at 1459 (controversial political issues); Citizens State Bank, 612 F.2d at 1093 (tax reform).  The use of chemicals, such as Atrazine, in modern agriculture is also a controversial issue.  The Plaintiffs allege that Atrazine is a dangerous chemical that is banned in Europe and is polluting our water.  Complaint ¶¶ 32-41; Plaintiffs, City of Greenville et al.'s Opposition to the Illinois Fertilizer & Chemical Association's Motion to Quash Subpoena (Case No. 11-1032 d/e 7) (Plaintiffs' IFCA Response), at 8-9; Plaintiffs IFB Response, at 8-10; Plaintiffs' CICI Response, at 8-9.  The Associations assert that Atrazine is safe if used properly and is critically necessary to producing food for our society.  E.g., Plaintiffs' IFCA Response, Exhibit F, IFCA Letter to Environmental Protection Agency dated April 26, 2001; Plaintiffs' IFB

Response, Exhibit H, <u>Illinois Without Atrazine: Who Pays?</u>, at 1, Abstract; <u>Plaintiffs' CICI Response</u>, Exhibit E, <u>IFCA February 12, 2010 Web Page</u>. The members of the Associations have First Amendment rights to associate with like-minded individuals to articulate their views to the public and to advocate for their views before the government. <u>See</u> <u>Perry</u>, 591 F.3d at 1159 ("Effective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association." (quoting <u>NAACP</u>, 357 U.S. at 460)). The declarations before the Court show that disclosure of private communications between the Associations and its members would have a chilling effect on members' rights by discouraging members from exercising those rights.

Because the Associations have met their initial burden, the Plaintiffs must demonstrate the information is necessary to their case and cannot be secured by other means that are less likely to affect First Amendment rights. <u>Perry</u>, 591 F.3d at 1161. In weighing these concerns, the Court must consider the relevance of the information sought, the Plaintiffs' need for the information, and the impact of disclosure on First Amendment rights. <u>See</u> <u>In re Heartland Institute</u>, 2011 WL 1839482, at *3 (N.D. Ill. 2011). In this case, the information sought may be relevant to Syngenta's knowledge and intent, which is an element in the trespass claim and the punitive damages claims.

The Plaintiffs, however, have not shown that the information could not be obtained by other means that would be less likely to affect First amendment rights. The Plaintiffs have now succeeded in securing documents from Syngenta in discovery showing Syngenta's efforts to collaborate with the Movants and others to advocate for Atrazine. See IFB Supplemental Response, Exhibits A, B, C, D, E, and F (Case No. 11-1031 d/e 22, 23, 24, 25, 26, and 27). The documents further identify employees and agents of Syngenta who could be deposed to provide additional information. Given the availability of the relevant information from these sources, the Court finds that the Plaintiffs have not shown the requisite need to overcome the concerns of the chilling effect of production on the First Amendment rights of the members of the Associations. The Court, therefore, sustains the First Amendment objection of the Associations to the remaining document request in the subpoena served on it. Therefore, the subpoenas served on the Associations and their presidents are quashed.

The Court, having quashed the subpoenas at issue on First Amendment grounds, feels obligated to address certain relevant First Amendment arguments / proposals raised by Plaintiffs herein.

The Plaintiffs argue that the Associations failed to meet their initial burdens to invoke the First Amendment privilege. The Plaintiffs argue that

the Associations must present objective facts that the discovery will result in a chilling of the proponent's associational.   E.g., Plaintiffs' IFB Response, at 1-2.  The Court finds that the Associations have made a sufficient showing that their members First Amendment rights are impaired by the Plaintiffs' subpoenas.  The fundamental issue is what will happen in the future if documents are disclosed.  The Movants must present evidence of a reasonable probability of a chilling effect on the members' First Amendment rights.  Declarations from association members, employees, and agents setting forth the impact of disclosure on their future behavior are sufficient to meet this burden.  See e.g., Perry, 591 F.3d at 1163; Dole, 950 F.2d at 1458-60.  In light of those cases, and the importance of protecting the First Amendment rights non-parties such as the other members of the Associations, the Court finds that the evidence presented here is sufficient to meet the initial burden to raise the privilege.

The Plaintiffs rely heavily on Buckley; John Doe No. 1 v. Reed, __ U.S. __, 130 S.Ct. 2811, 2818 (2010); and National Association of Manufacturers v. Taylor, 582 F.3d 1 (D.C. Cir. 2009).  None of these cases involve asserting a First Amendment privilege in discovery.  Rather, they all involve facial challenges to disclosure statutes.  Buckley concerned a statute mandating disclosure of contributors to political campaigns and parties, Taylor involved a statute mandating disclosure of parties

contributing to lobbying efforts, and <u>Reed</u> involved a statute authorizing disclosure of individuals who signed initiative petitions.

In all of these cases, the Courts did not require the plaintiffs to present objective facts that disclosure will have a chilling effect of First Amendment rights before subjecting the statutes to heightened scrutiny. These Courts recognized that in the context of facial challenge, mandatory disclosure alone implicated First Amendment interests and required subjecting the statutes to heightened scrutiny.  The <u>Buckley</u> Court declined to create a special disclosure exemption for minor political parties because those parties failed to present evidence showing a reasonable probability that disclosure would deter membership due to fears of harassment or intimidation, but still applied heightened scrutiny to review the statute.  The <u>Buckley</u> Court held that interference with associational rights would only be sustained , "if the State demonstrates a sufficiently important interest and employs means closely drawn to avoid unnecessary abridgment of associational freedoms."  <u>Buckley</u>, 424 U.S. at 25, 74.  The <u>Reed</u> court stated that interference with First Amendment rights must be subjected to exacting scrutiny that, "'requires a 'substantial relation' between the disclosure requirement and a 'sufficiently important' government interest.'"  <u>Reed</u>, 130 S.Ct. At 2818 (quoting <u>Citizens United v. Federal Election Commission</u>, __ U.S. __, 130 S.Ct. 876, 914 (2010) (quoting <u>Buckley</u>, 424

U.S. at 64)).[2]  The <u>Taylor</u> Court noted some disagreement in the
precedents on the precise formulation of the applicable test for heightened
scrutiny, but ultimately subjected the statute to strict scrutiny.  <u>Taylor</u>, 582
F.3d at 10-11.

The <u>Taylor</u> case is significant because the plaintiff was the National
Association of Manufacturers (NAM).  Like the Associations here, NAM
members have joined together to promote their business interests rather
than emotionally charged controversial issues like the definition of marriage
or racial discrimination.  Yet, the <u>Taylor</u> Court recognized the importance of
NAM members' associational rights and subjected the statute to strict
scrutiny.  Similarly here, the First Amendment associational rights of the
members of the Association are entitled to protection.  The Associations
have made the required prima facie showing, and the Plaintiffs have failed
to meet their required burden to justify disclosure.  The applicable portions
of the subpoenas at issue, thus, must be quashed.

The Plaintiffs argue that even if the Associations have met their initial
burden, the Court could fashion a protective order that would alleviate a
adverse impact on the members of the Associations.  The Court again
disagrees.  An important purpose of the First Amendment privilege is to

_____

[2]Justice Alito further noted that the petitioners in <u>Reed</u> would have a strong
argument in challenging the disclosure statute as applied to their circumstances.  <u>Reed</u>,
130 S.Ct. at 2823 (Alito, J., concurring).

allow members to debate issues to reach a consensus and to formulate strategies to present their position. Communications "within" the association must remain confidential to allow members and Association agents and employees to speak frankly. Disclosure to the Plaintiffs, even under a protective order, could frustrate that purpose. See Perry, 591 F.3d at 1164; but cf., National Organization for Marriage v. McKee, 723 F.Supp.2d 236, 243 n.3 (protective order provided sufficient protection when discovery only disclosed identity of donors to the association rather than internal communications). Furthermore, a protective order may not prevent disclosure of information produced in discovery that is used to underpin a judicial decision. See Baxter International, Inc. v. Abbott Laboratories, 297 F.3d 544, 545-46 (7th Cir. 2002). The Court finds that a protective order would not be sufficient to protect First Amendment rights in this case.

WHEREFORE, the Motion to Quash or in the Alternative for a Protective Order and Objections to the Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action and to Testify at a Deposition in a Civil Case (Case No. 11-10 d/e1), Third Party Subpoena Respondents Illinois Farm Bureau and Philip Nelson's Motion to Quash Subpoena to Produce Documents or in the Alternative for a Protective Order (Case No. 11-1031 d/e 1), Third Party Subpoena

Respondents Illinois Farm Bureau and Philip Nelson's Motion to quash

Subpoena for Deposition and Deposition Notice or in the Alternative for a

Protective Order (Case No. 11-1031 d/e 3), and the Motion to Quash or in

the Alternative for a protective Order and Objections to the Subpoena to

Produce Documents, Information, or Objects or to Permit Inspection of

Premises in a Civil Action and to Testify at a Deposition in a Civil Action

(Case No. 11-1032 d/e 1) are ALLOWED.   The subpoenas at issue are

quashed.

ENTER: October 27, 2011

*s/ Byron G. Cudmore*
BYRON G. CUDMORE
UNITED STATES MAGISTRATE JUDGE
